IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL INFORMATION |
| v. | ) | |
| | ) | NO. 3:11-CR-006-01-TCB |
| S. POPE CLEGHORN, JR. | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM AND MOTION
## FOR DOWNWARD VARIANCE IN SENTENCE

COMES NOW, S. Pope Cleghorn, Defendant herein, by and through the undersigned counsel, and respectfully files this, his Sentencing Memorandum and Motion for Downward Variance in Sentence, and hereby shows the following:

### I. INTRODUCTION

> But, surely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very life hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed court to consider as a necessary sentencing factor, the history and characteristics of the defendant.

*United States v. Adelson*, 441 F. Supp. 2d 506, 513 (S.D.N.Y. 2006).

Steven Pope Cleghorn, Jr., has admitted guilt relating to unquestionably serious offenses. He was charged on June 16, 2011, in a Criminal Information with

1

one count of bank fraud, in violation of 18 U.S.C. § 1344. Doc. # 1. The Criminal Information illustrates the seriousness of Mr. Cleghorn's wrongful acts, which Mr. Cleghorn has fully admitted and pled to, and accepted responsibility for. Mr. Cleghorn, in his position as President and Chief Executive Officer of HomeTown Bank in Villa Rica, Georgia (hereinafter "HTB," or "Bank"), knowingly defrauded the Bank by issuing loans to an acquaintance and friend, Russell Long, and misappropriating funds from the loans, without the Bank's knowledge or authorization. *See id.*, at ¶ 2. In furtherance of this scheme, Mr. Cleghorn directed his secretary to prepare false minutes by the Bank's Board of Directors falsely indicating that the loans had been approved by the Bank's Board of Directors. *See id.* Mr. Cleghorn also filed a Subordination of Mortgage on a loan to Long for Long's personal residence in Destin, Florida, for $1.8 million, without the Bank's knowledge or authorization, causing the Bank to lose its priority. *See id.*, at ¶¶ 3, 4. Mr. Cleghorn also asked Long to create more detailed draw requests on a development loan to Long to build a subdivision in Wetumpka, Alabama, and Long submitted false draw requests to Mr. Cleghorn, which Mr. Cleghorn provided to examiners of the Federal Deposit Insurance Corporation (FDIC). *See id.*, at ¶¶ 5, 7. Mr. Cleghorn used the funds from the loans to Long to pay other loans to Long held by the Bank. *See id.*, at ¶ 6.

In view of these facts, Mr. Cleghorn waived formal Indictment and entered a Guilty Plea and Plea Agreement (hereinafter "Plea Agreement"), Doc. # 7-1, with the Government and plea of guilty in this Court the day after the filing of the Criminal Information.

A Presentence Investigation Report (hereinafter "Presentence Report," or "PSIR") has been issued for Mr. Cleghorn. The Presentence Report calculates Mr. Cleghorn's base offense level as seven under U.S.S.G. § 2B1.1(a)(1), with a 16 level increase for amount of loss, pursuant to U.S.S.G. § 2B1.1(b)(1)(I). PSIR, §§ 34, 35. The Presentence Report also recommends increases to Mr. Cleghorn's offense level by two levels for sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(1)(I), PSIR, § 37; two levels for alleged role in the offense, pursuant to U.S.S.G. § 3B1.1(c), *id.*, at § 40; two levels for abuse of a position of private trust, pursuant to U.S.S.G. § 3B1.3, *id.*, at § 41; and two levels for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, *id.*, at § 41. The Presentence Report recommends a three level decrease to Mr. Cleghorn's offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), yielding a total offense level of 28. *Id.*, at § 44, p. 27. With a criminal history category of I, the Presentence Report recommends a custody guideline range of 78 to 97 months imprisonment. *Id.*, at § 49, p. 27. The Presentence Report also recommends an order of restitution in the amount of $2,424,301.67. *Id.*, at § 32. p. 27.

## A. <u>A Close Relationship Goes Bad</u>

Mr. Cleghorn timely submitted objections and responses to the Presentence Report. In his objections, Mr. Cleghorn sets forth a frank and extensive background and context to his ill-fated relationship with Russell Long, while in no way minimizing the gravity of the conduct which he has accepted responsibility for. Mr. Cleghorn and his wife met Long after they moved to Florida in 1997 and Mr. Cleghorn began working for SouthTrust Bank (hereinafter "SouthTrust"). PSIR, p. 5. Long and the Cleghorns became close friends, and socialized together several times a week for the four years in which the Cleghorns were in Florida. *Id.*, at p. 5, 6.

From the beginning of their acquaintance and friendship, Long was interested in SouthTrust's interest in building a larger loan relationship with him. *Id.*, at p. 6. SouthTrust provided loan financing for Long's home, office, several home construction projects and lot purchases, renovations, Long's mother's home, and other real estate transactions. *Id.*

In 2000, the Cleghorns moved to Montgomery, Alabama, where Mr. Cleghorn became Senior Lending Officer and Commercial Lending Manager for Colonial Bank. *Id.* Long moved his loans from SouthTrust to Colonial Bank. *Id.* He and the Cleghorns remained close and kept in touch on a weekly basis, and Mr. Cleghorn saw Long during numerous commutes to Florida in an effort to establish

4

a loan production office for Colonial Bank. *Id.* Mr. Cleghorn was also in the wedding party at Long's wedding. *Id.*

During this time, Colonial Bank issued Long additional loans for speculative homes and acquisition and development loans for small subdivisions. *Id.* When Mr. Cleghorn left Colonial Bank in July of 2002 to become President and Chief Executive Officer of HTB, Long's loans with Colonial Bank totaled approximately $10,000,000. *Id.*, at p. 7. Furthermore, soon after Mr. Cleghorn began working at HTB, the Bank's Board of Directors met and encouraged Mr. Cleghorn to explore expansion in the Northwest Florida area. *Id.*, at p. 8. Around this time, Long refinanced his loans with HTB. *Id.* HTB also extended loans to Long for two primary dwellings, an office building for Long's company, and several residential lots. *Id.*, at p. 8, 9. Long's loans, other than the loans which form the basis for the charges against Mr. Cleghorn, were known to the respective banks. Furthermore, Long did not begin making improper payments to Mr. Cleghorn prior to 2003.

**B. Damage to a Remarkable Life and Family**

The letters provided to the Court, as well as the Presentence Report, also strikingly outline Mr. Cleghorn's previously admirable life and achievements, as well as the devastating effect and loss which Mr. Cleghorn's wrongful actions have had on his life and the lives of others. Mr. Cleghorn's family has been prominent in Villa Rica for nearly a century. PSIR, p. 7. Mr. Cleghorn set out in his career with

the personal ambition of becoming the president of a bank by the young age of 30. *Id.* After graduating from the University of Georgia, he worked continuously in the banking industry, as indicated above, ultimately becoming President and Chief Executive Officer for HTB in his own home town, a treasured achievement for him, given his goals and his connection to his community. *Id.* Mr. Cleghorn also became extensively involved in giving of his time and talents to his community, joining the Carroll County & Haralson County Chambers of Commerce; Boy Scouts Council, Carroll County; School Council, Villa Rica High School; Downtown Development Authority of Villa Rica, Policy Committee; and Carroll County Regional Development Authority, Board of Directors. *Id.*, at § 70.

Mr. Cleghorn has been married to his wife, Wendy, for over 14 years. *Id.*, at § 56. The Cleghorns have a son, Trey, who is 11 years old. *Id.* Mr. Cleghorn's actions and their results have had been extremely difficult on his wife and son, and have damaged his close relationship with his parents.

## C. The Recommended Enhancements and a Reasonable Sentence

Mr. Cleghorn comes before this Court at sentencing fully cognizant of and responsible for the wrongfulness of his actions and the harm they have caused. He does not contest in the slightest the large loss his conduct has caused to the Bank, and fully acknowledges, to his shame, that he has abused a position of trust. PSIR, §§ 35, 41.

However, Mr. Cleghorn shows, pursuant to the Guidelines and the instructions of the United States Sentencing Commission, that his sentence should not be enhanced for obstruction of justice pursuant to Section 3C1.1 or, in the alternative, for use of sophisticated means pursuant to Section 2B1.1(b)(9)(C), for the reason that such dual application is prohibited or discouraged by the Guidelines and the Commission, and would constitute prohibited double counting. Furthermore, Mr. Cleghorn submits that he should not be held to be an alleged "organizer, leader, manager, or supervisor" of the criminal activity, for the purposes of the proposed two level enhancement pursuant to Section 3B1.1(c). The Government has concurred that the proposed role in the offense enhancement should not be applied.

Mr. Cleghorn shows, that for the reasons set forth herein, this Court may decline to apply the proposed enhancements for role in the offense, pursuant to Section 3B1.1(c), and obstruction of justice, pursuant to Section 3C1.1, and find his total offense level to be 24, with a sentencing range of 51 to 63 months' imprisonment. Lastly, Mr. Cleghorn submits that this Court may impose a sentence below the recommended sentencing range and, in all events, prays that this Court impose a sentence sufficient, but no greater than necessary, to satisfy the sentencing purposes in 18 U.S.C. § 3553(a).

## II. ARGUMENT AND CITATION OF AUTHORITIES

### A. The Enhancement for Obstruction of Justice, Pursuant to U.S.S.G. § 3C1.1, Should Not Be Applied

The Presentence Report enhances Mr. Cleghorn's offense for sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(9)(C). PSIR, § 37. It also enhances his sentence by an additional two levels for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. *Id.*, at § 41. Both enhancements are based upon Mr. Cleghorn's concealment of his criminal activity. *Id.*, at §§ 37, 41. Mr. Cleghorn respectfully submits that only one enhancement should properly be applied.

Application of an enhancement for obstruction of justice, pursuant to Section 3C1.1, where an enhancement for sophisticated means enhancement pursuant to Section 2B1.1(b)(9)(C) has been applied is prohibited or discouraged by Section 2B1.1(b)(9)(C) itself. The Application Notes to Section 2B1.1 by the United States Sentencing Commission provide "(C) Non-Applicability of Chapter Three Adjustment.—If the conduct that forms the basis for an enhancement under subsection (b)(10) is the only conduct that forms the basis for an adjustment under § 3C1.1, do not apply that adjustment under § 3C1.1." U.S.S.G. § 2B1.1, Note 8(C).

The Presentence Report cites the Application Notes to U.S.S.G. § 1B1.1 in response to Mr. Cleghorn's objections to the proposed enhancement under Section 3C1.1. PSIR, §§ 37, 41. Section 1B1.1 provides:

8

> 4. ...
> (B) Cumulative Application of Multiple Adjustments from Multiple Guidelines.—*Absent an instruction to the contrary*, enhancements under Chapter Two, adjustments under Chapter Three, and determinations under Chapter Four are to be applied cumulatively. In some cases, such enhancements, adjustments, and determinations may be triggered by the same conduct...
> 5. Where two or more guideline provisions appear equally applicable, but the guidelines authorize the application of only one such provision, use the provision that results in the greater offense level...

U.S.S.G. § 1B1.1, Notes 4, 5 (emphasis added). In this case, the Guidelines provide an express instruction not to apply the enhancement for obstruction of justice under Section 3C1.1, where the defendant has received an enhancement for sophisticated means, pursuant to Section 2B1.1(b)(9)(C). U.S.S.G. § 2B1.1, Note 8(C).

In adherence to the Guidelines' instructions, Mr. Cleghorn's conduct should be enhanced two levels for use of sophisticated means, and the proposed enhancement for obstruction of justice should be disregarded. The concealing conduct referenced in both proposed enhancements was indisputably unlawful. However, application of both enhancements simultaneously would result in prohibited double-counting and increased punishment. "'Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" *United States v.*

9

*Bracciale*, 374 F.3d 998, 1009 (11th Cir. 2004) (quoting *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999)). Double counting may be permissible where "'the Sentencing Commission intended the result...'" *Id.* (quoting *Matos-Rodriguez*, at 1310).

Pursuant to the foregoing authorities, enhancement of his sentence for sophisticated means, pursuant to Section 2B1.1(b)(9)(C), would adequately account for Mr. Cleghorn's unlawful conduct. Furthermore, as demonstrated above, the Sentencing Commission has expressly stated that an enhancement for obstruction should not be applied where the defendant receives an enhancement for sophisticated means—implicitly recognizing the danger of double counting of alleged harm. For the reasons set forth herein, the Presentence Report's proposed two level enhancement for obstruction of justice, pursuant to Section 3C1.1, should be disregarded. *See United States v. Cruz-Natal*, 150 Fed.Appx. 961, 966 (11th Cir. 2005) (*per curiam*; unpublished) (vacating the defendant's sentence for conspiring to defraud the government by filing false Medicare claims where the sentencing court applied a two level enhancement for use of a special skill, pursuant to U.S.S.G. § 3B1.3 and for being a leader or organizer of the offense, pursuant to Section 3B1.1(a), finding that the enhancement for use of a special skill was unavailable if the defendant had already received an enhancement for being a leader or organizer pursuant to Section 3B1.3, and vacating the defendant's

sentence and remanding for resentencing). In the alternative, if Mr. Cleghorn's sentence is enhanced for obstruction, the proposed sophisticated means enhancement should not be applied.

## B. The Enhancement for Aggravating Role, Pursuant to U.S.S.G. § 3B1.1(c), Should Not Be Applied

The Presentence Report proposes a two level enhancement to Mr. Cleghorn's sentence for aggravating role in the offense, pursuant to U.S.S.G. § 3B1.1. PSIR, § 40. Section 3B1.1 provides for a two level increase to a defendant's offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity..." U.S.S.G. § 3B1.1(c), not involving five or more participants. As alleged grounds for the proposed enhancement, the Presentence Report alleges that:

> The defendant directed co-conspirator Russell Long to create false invoices to present to FDIC investigators. In addition, he directed his secretary, Lisa Bush, to alter and conceal documents. Bush also assisted Long in preparing the false invoices that were turned over to FDIC investigators. A two-level aggravating role enhancement for managing a criminal activity involving less than five participants is thus supported.

PSIR, § 40.

Application Note 4 to Section 3B1.1 provides:

> 4. In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the

claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1(c), Note 4.

The facts in this case support a conclusion that Mr. Cleghorn was not an alleged "organizer, leader, manager, or supervisor" in the criminal activity, and that his sentence should not be enhanced pursuant to Section 3B1.1. Russell Long was an equal co-conspirator with Mr. Cleghorn, and Mr. Cleghorn did not exercise control or authority over Long, pursuant to Note 4 to Section 3B1.1. *See United States v. Harness*, 180 F.3d 1232, 1236 (11th Cir. 1999) (vacating the sentence of the defendant, an accountant for the Red Cross charged with unlawful diversion of funds, and remanding for resentencing where the sentencing court increased the defendant's sentence as an alleged organizer, leader, manager, or supervisor of criminal activity, pursuant to Section 3B1.1(c) but made no findings that the defendant exercised any control over any other participants who engaged in the criminal activities). Neither did Mr. Cleghorn receive an alleged greater share of the unlawful gains of the scheme.

Furthermore, the Presentence Report's allegation that Mr. Cleghorn allegedly personally assisted Mr. Long in preparing false "invoices" is simply erroneous. PSIR, § 40. Long initially sent Mr. Cleghorn false draw requests. *Id.*, at

§ 12. Mr. Cleghorn told Long that he needed greater detail on the requests. *Id.* Long then submitted additional false draw requests to Mr. Cleghorn. *Id.*

Mr. Cleghorn furthermore did not recruit any persons to join in the criminal activity. *See United States v. Alred*, 144 F.3d 1405, 1421 (11th Cir. 1998) (vacating the defendant's sentence for participation in a marijuana distribution conspiracy on the ground that the sentencing judge improperly gave the defendant a four level enhancement to his base offense level for allegedly having a leadership role in the offense, pursuant to Section 3B1.1, finding that "there was little indication that [the defendant] actively recruited buyers or directed their activities"). It is true that Mr. Cleghorn gave instructions to his secretary in relation to his unlawful acts of concealment. His secretary, however, was not a party to any unlawful agreement between Long and Mr. Cleghorn. On the contrary, the secretary was employed by the Bank and Mr. Cleghorn for the purposes of their legitimate business. Any alleged involvement of the secretary should be held to be insufficient to establish that Mr. Cleghorn was an alleged "organizer, leader, manager, or supervisor" of criminal activity sufficient to enhance his sentence pursuant to Section 3B1.1. Lastly, Mr. Cleghorn respectfully submits that the conduct forming the basis for the proposed enhancement for role in the offense is largely the same concealing conduct which forms the basis of his proposed enhancements for sophisticated means, pursuant to Section 2B1.1(b)(9)(C), and obstruction of justice, pursuant to

13

Section 3C1.1. *See* PSIR, §§ 37, 40, 41. Mr. Cleghorn shows that the Government has agreed to Mr. Cleghorn's proposed non-application of the proposed enhancement.

Accordingly, for the reasons set forth herein, both the defense and the government agree that this Court should decline to enhance Mr. Cleghorn's sentence for an alleged aggravating role in the offense, pursuant to Section 3B1.1.

## C. A Sentence Should Be Imposed Below the Recommended Sentencing Range

Pursuant to *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), under the advisory Sentencing Guidelines, a sentencing court must consider the Guidelines, but must also consider the policies set forth in 18 U.S.C. § 3553(a), *id.*, at 245-46 (internal citations omitted) (citing 18 U.S.C. § 3553(a)). *Booker* expressly held that a sentencing court may "sentence[ ] within or outside the Guidelines range in the exercise of his discretionary power under [18 U.S.C.] § 3553(a)..." *Id.* at 260 (emphasis added). § 3553(a) states that a "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a).

Pursuant to *Booker* and its progeny, the Court of Appeals has deferentially affirmed as reasonable downward variances from a Guidelines range of 188 to 235 months imprisonment to 90 months, or over 50%, *see United States v. Williams*, 435 F.3d 1350, 1354 (11th Cir. 2006); from a statutory maximum of 20 years to 2

years, or 90%; *see United States v. Winingear*, 422 F.3d 1241, 1246 (11th Cir. 2005); and from a range of 262 to 327 months to 192 months, a 27% reduction, *see United States v. Eugene*, No. 08-16502, 2009 WL 1154869, *1 (11th Cir., April 30, 2009) (*per curiam*; unpublished).

The nature and circumstances of the offense and Mr. Cleghorn's history and characteristics weigh in favor of the imposition of a sentence of straight probation pursuant to 18 U.S.C. § 3553(a)(1). While his offense is indeed serious, as set forth herein, his criminal and unquestionably wrongful acts were in response to the increasingly troubled financial situation of Long and his position with the Bank. MR. Cleghorn cooperated fully with the Government almost as soon as his wrongful actions had been discovered.

Critically, as set forth herein and shown in the letters submitted from family and friends, Mr. Cleghorn unquestionably has been a prominent and contributing member of his community. He achieved remarkable success in his profession. His criminal acts, however, have debarred him from employment in his chosen profession.

Nevertheless, in the face of the devastating consequences of his actions, Mr. Cleghorn has strived to be a better, loving and caring husband and father. He has continued to try to work.

A sentence of imprisonment within, or less than, the recommended Guideline range would furthermore unquestionably promote respect for the law in Mr. Cleghorn and others, pursuant to 18 U.S.C. § 3553(a)(2)(A). Conversely, a lengthy sentence of imprisonment is not necessary to deter others from similar criminal conduct, under 18 U.S.C. § 3553(a)(2)(B).

In addition, Mr. Cleghorn has virtually no criminal history, and poses no foreseeable future danger to the public now that he has been banned from the banking industry. Accordingly, 18 U.S.C. § 3553(a)(2)(B) and 18 U.S.C. § 3553(a)(2)(C) favor imposition of a sentence below, or at the low end of, any recommended sentencing range.

Accordingly, the majority of the sentencing purposes under Section 3553(a) authorize this Court to grant a downward variance in sentence and impose a sentence below the recommended Guidelines custody range in Mr. Cleghorn's case. In any event, this Court should impose a reasonable sentence, sufficient, but not greater than necessary, to constitute punishment for his unlawful conduct.

## III. CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendant S. Pope Cleghorn, Jr., prays that this Court sentence him according to the arguments set forth herein and impose a sentence on Defendant below, or at the low end, of any custody range recommended by the United States Sentencing Guidelines, but in any event sufficient, but no greater than necessary, to comply with the sentencing purposes in 18 U.S.C. § 3553(a)

Respectfully submitted, this 15th day of November, 2011.

s/Craig A. Gillen
Craig A. Gillen, Esq.
Georgia Bar No. 294838
GILLEN WITHERS & LAKE, LLC
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone: (404) 842-9700
Facsimile: (404) 842-9750
E-mail: cgillen@gwllawfirm.com

Counsel for Mr. S. Pope Cleghorn, Jr.

## CERTIFICATION UNDER LOCAL RULE 7.1(D)

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that the foregoing filing is a computer-generated document, prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1(B).

s/Craig A. Gillen
Craig A. Gillen, Esq.
Georgia Bar No. 294838
GILLEN WITHERS & LAKE, LLC
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone:   (404) 842-9700
Facsimile:    (404) 842-9750
E-mail:       cgillen@gwllawfirm.com

Counsel for Mr. S. Pope Cleghorn, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 15th day of November, 2011, the undersigned electronically filed the foregoing Sentencing Memorandum and Motion for Downward Variance in Sentence, using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

**Stephen H. McClain**
**Assistant United States Attorney**
**United States Attorney's Office for the Northern District of Georgia**
@usdoj.gov

s/Craig A. Gillen
Craig A. Gillen, Esq.
Georgia Bar No. 294838
GILLEN WITHERS & LAKE, LLC
One Securities Centre, Suite 1050
3490 Piedmont Road, N.E.
Atlanta, Georgia 30305
Telephone:  (404) 842-9700
Facsimile:  (404) 842-9750
E-mail:    cgillen@gwllawfirm.com

Counsel for Mr. S. Pope Cleghorn, Jr.
